**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUSTIN WASHINGTON, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>MAVIS DISCOUNT TIRE, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff JUSTIN WASHINGTON ("Plaintiff WASHINGTON," or "Plaintiff") on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against MAVIS DISCOUNT TIRE, INC. ("Defendant" or "Mavis"), and state as follows:

### INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime premiums, due to time-shaving; (2) liquidated damages; and (3) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL") that they and others similarly situated are entitled to recover from Defendant: (1) unpaid wages,

1

including overtime premiums, due to time-shaving; (2) compensation for unpaid spread of hours premiums, (3) statutory penalties; (4) liquidated damages; and (5) attorneys' fees and costs.

3. Defendant operates more than 430 service centers across seven states, including New York, New Jersey, Pennsylvania, Connecticut, Massachusetts, Georgia and Florida. In addition to its core offering of tires, Mavis offers repair and maintenance services including brakes, alignments, suspension, shocks, and exhaust. Putative collective members are all current and former employees of Defendant, who were victims of Defendant's underpayment payment of wages, including overtime. Defendant instituted a statewide policy of not compensating the thirty (30) minute lunch-breaks of employees, despite employees being forced to work through the entirety of their lunch. While clocked-out for lunch, employees were required to continue engaging in work. Plaintiff brings this wage and hour class action on behalf of himself and all non-exempt individuals employed by Defendant in New York, who during the applicable state and federal limitations periods up to and including the present (the "Class Period"), were similarly underpaid by Defendant in violation of protections afforded under the FLSA and NYLL.

4. Plaintiff further alleges claims seeking damages and other relief under New York Executive Law § 296 ("NYHRL"), and New York City Administrative Code § 8-107 ("NYCHRL") for Defendant's creation of and fostering of a hostile work environment through persistent sexual harassment against Plaintiff.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

7. Plaintiff JUSTIN WASHINGTON, for all relevant time periods, was a resident of New York County, New York.

8. Defendant operates a chain of auto-part service and retail stores, operating primarily under the brand name "Mavis Discount Auto Tire" with more than 150 stores across New York State ("Store Locations"). *See* **Exhibit A**, Listing Mavis' New York Store Locations.

9. All the Store Locations are managed by the same executive management team operating from the same Headquarters, with the same wage policies and procedures. Further each Store Location is engaged in related activities, share common ownership, and have a common business purpose:

   i. Defendant Mavis maintains a centralized payroll, human resources, and administrative departments which operate all Store Locations. Defendant's centralized departments are located at Defendant's headquarters and satellite offices located in and around Millwood, NY. *See* **Exhibit B**, Defendant's Career Page ("By supporting over 825 customer-focused retail locations in New York, New Jersey, Connecticut, Massachusetts, Pennsylvania, Delaware, Georgia, Florida, Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, and Texas, Mavis Discount Tire's Operations Support Center team members lay the foundation for achieving a world-class customer experience. Apply now…[to] our Operations Support Center located in Millwood, New York.")

   ii. Mavis's centralized management is further clarified by its single career page, which allows interested persons to apply to positions relating to all Store

3

                Locations. Despite listing open positions at all Store Locations, Defendant Mavis's career page only offers payroll positions, marketing positions, executive management positions, IT positions, and other administrative roles at Defendant's headquarters and satellite offices. *See* **Exhibit C;** *compare with* **Exhibit D**.

    iii.    Plaintiff and other employees were transferred between Store Locations. When employees moved to different Store Locations, they were subject to the same wage and hour policies and procedures established by Defendant Mavis.

    iv.    All Mavis Store Locations share a common share common promotional deals, which may be printed and redeemed at any store. *See* **Exhibit E**.

10.    Defendant MAVIS DISCOUNT TIRE, INC. is a domestic business corporations organized under the laws of the State of New York. Defendant MAVIS DISCOUNT TIRE, INC. operates under the laws of the State of New York with an address for service of process located at C T Corporation System, 28 Liberty St., 26th Floor, New York, NY, 10005, and with its company headquarters located at 358 Saw Mill River Road, Millwood, NY, 10546.

11.    At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, and the state laws within which they operate.

12.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the businesses operated by Defendant.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

13.    Plaintiff brings claim for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of non-exempt employees, including tire technicians, automotive technicians, assistant/service managers, warehouse workers, employed by Defendant

within New York on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

14. At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including: (i) unpaid wages, including overtime, due to time-shaving; (ii) liquidated damages; and (iii) attorneys' fees and costs.

15. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

16. Plaintiff brings claim for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of on behalf of non-exempt employees on behalf of non-exempt employees, including tire technicians, automotive technicians, assistant/service managers, warehouse workers, employed by Defendant in New York State on or after the date that is six (6) years before the filing of the Complaint in this case (the "Class Period").

17. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendant. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendant's records. For

purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under FRCP 23.

18. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class.

19. Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same Defendant's corporate practices of (i) failing to pay proper wages, including overtime premiums at one-and-one half times their hourly rates for hours in excess of forty (40) each workweek, due to time-shaving; (ii) failing to properly compensate spread of hours premiums; (iii) failing to provide Class members with proper wage statements with every payment of wages; and (iv) failing to properly provide wage notices to Class members, at date of hiring and annually. Defendant's company-wide policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member.

20. Defendant's corporate-wide policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

21. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

22. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

23. Defendant and other employers throughout the state violate relevant state's wage and hour statutes. Current employees are often afraid to assert their rights out of fear of direct or

indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

24. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendant employed Plaintiff and Class members within the meaning of state labor laws;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay the Class members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendant required to pay Plaintiff and Class members for their work;

d) Whether Defendant properly notified Plaintiff and Class members of their pay rates;

e) Whether Defendant paid Plaintiff and Class members for all hours, including overtime, worked given Defendants' policy of time shaving;

f) Whether Defendant compensated Plaintiff and Class members spread of hours premiums for workdays exceeding ten hours;

g) Whether Defendant provided proper wage statements to Plaintiff and Class members; and

h) Whether Defendant provided proper wage and hour notices to Plaintiff and Class members.

## STATEMENT OF FACTS

**Wage and Hour Claims:**

25. In or about December 2021, Plaintiff JUSTIN WASHINGTON was hired by Defendant to work as a tire specialist at the store located at 69 E Sunrise Hwy, Freeport, NY 11520. Plaintiff worked at this location until the end of his employment in May of 2022.

26. At all times during Plaintiff's employment with Defendant, Plaintiff was paid at New York's mandated base hourly rate.

27. FLSA Collective Plaintiffs and Class members received similar compensation as Plaintiff.

28. Throughout his employment with Defendant, Plaintiff was scheduled to work from 8:00 a.m. to 6:00 p.m. on Monday, Wednesday, and Friday, and from 9:00 am to 5:00 pm on Saturday and Sunday. In addition to these scheduled hours, Plaintiff would also be required to work thirty (30) minutes to an hour and a half past shift. Despite Plaintiff's schedule, Plaintiff always worked hours in excess of his schedule for which he was not compensated.

29. All throughout Plaintiff's employment with Defendant, Plaintiff was required to clock out each day for a thirty (30) minute lunch break. Despite clocking out each day, Defendant demanded employees work through lunch by requiring employees to work during lunch, while clocked out. Despite working during these breaks, Defendant would still deduct thirty (30) minutes from each day of Plaintiff's and Class member's compensable time. FLSA Collective Plaintiffs and Class members similarly suffered from Defendant's same wrongful policy of time-shaving as Plaintiff.

30. Additionally, despite working in excess of ten hours three days a week, Plaintiff was never compensated spread of hours premiums. FLSA Collective Plaintiffs and Class members were similarly not properly compensated for these earned wages.

31. As a result of Defendant's wrongful policy of time-shaving Plaintiff and Class members' hours, Plaintiff was not properly compensated for all of his wages, including overtime premiums for all hours worked over forty (40). FLSA Collective Plaintiffs and Class members were similarly not properly compensated for their wages earned, including overtime premiums for all hours worked over forty (40).

32. In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendant's failure to provide such notices trivializes the importance of these notices in protecting Plaintiffs' interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being properly paid.

33. Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendant's conduct actually harmed Plaintiff and Class members. Defendant's failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendant, allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class members' rights. This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law.

Moreover, Defendant's failure to provide a wage notice to employees allowed Defendant to hide their responsibility and deprive employees of timely compensation.

34. The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff to struggle to timely pay bills. Class members similarly struggle to timely pay debts due to Defendant's continued attempts to hide wrongdoing from employees.

35. Throughout Plaintiff's employment with Defendant, Plaintiff's supervisors perceived him to be gay, and created/fostered a hostile work environment in the form of regular and sexual harassment directed at Plaintiff for this perceived sexual orientation.

36. Throughout Plaintiff's employment with Defendant, Plaintiff was subject to regular sexual harassment from his supervisors Giovanny [LNU], Richy [LNU], Kevin [LNU], Cory [LNU], and Anil [LNU]. Such discrimination included the following incidents:

   i. Plaintiff's supervisor Kevin [LNU] calling Plaintiff gay and informing him that "We're [referring to Plaintiff's supervisors] going to f**k you in the ass."

   ii. Plaintiff's supervisor Anil put his hands around Plaintiff's waist in a sexual manner to mock Plaintiff.

   iii. All the supervisors called Plaintiff "F*ggot" on a daily basis.

   iv. Plaintiff's supervisors informed him that "if you don't like gay jokes, you must be gay."

   v. Plaintiff's supervisors' harassment was adopted by other employees. For example, Brandon [LNU], a coworker of Plaintiff, sent Plaintiff's fiancé texts in an attempt to disparage Plaintiff.

   vi. Plaintiff's supervisor Ricky [LNU] singled Plaintiff out to inform him that "I

11

      [Ricky] take pride in getting homos fired…so be careful."

    vii.    Plaintiff's supervisors on multiple occasions would insult and berate Plaintiff into drinking alcohol with them. After the store closed, Plaintiff's supervisors would start drinking at the store. When Plaintiff declined to participate, Plaintiff's supervisors would berate and tell him to "stop being a faggot and just do it."

    viii.    Plaintiff's supervisors would refuse to provide opportunities to Plaintiff that other employees received. For example, despite continued requests to begin completing additional service requests such as alignment fixes, these opportunities went to other employees.

37.    In May of 2022, Plaintiff was constructively terminated as Plaintiff could no longer tolerate the harassment and destructive work environment that persisted at Defendants' store location.

38.    Plaintiff was and continues to be highly traumatized by his experiences with Defendant.

39.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class Members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

40.    Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

41. At all relevant times, Defendant was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

42. At all relevant times, Defendant employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

43. At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

44. At all relevant times, Defendant had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs for all their hours worked, including overtime hours for hours worked over forty (40).

45. Plaintiff is in possession of certain records concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs. Further records concerning these matters should be in the possession and custody of the Defendant. Plaintiff intends to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

46. Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all overtime premiums when Defendant knew or should have known such was due.

47. Defendant failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

48. As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

49. Due to the intentional, willful and unlawful acts of Defendant, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premiums, and an equal amount as liquidated damages.

50. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

51. Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

52. At all relevant times, Plaintiff and Class members were employed by the Defendant within the meaning of the NYLL, §§2 and 651.

53. Defendant knowingly and willfully failed to pay Plaintiff and Class members the full amount wages owed, including overtime premiums for hours worked over forty (40), in violation of the NYLL.

54. Defendant failed to provide a proper wage and hour notice, at the date of hiring and annually thereafter, to all non-exempt employees per requirements of the NYLL.

55. Defendant failed to provide proper wage statements with correct payment as required by NYLL § 195(3).

56. Due to the Defendant's NYLL violations, Plaintiff and Class members are entitled to recover from Defendant their unpaid overtime premiums, reasonable attorneys' fees, interest,

14

liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## DISCRIMINATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

57. Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

58. At all relevant times, Plaintiff was an employee within the meaning of the NYHRL.

59. At all relevant times, the Defendant was and continues to be an employer within the meaning of the NYHRL.

60. At all relevant times, the Defendant had at least four persons in their employ, and therefore the Defendant and their agents and employees were and are required to comply with the NYHRL.

61. Section 296(1)(a) of the NYHRL prohibits employers from discriminating against an employee because of sex "in terms, conditions or privileges of employment."

62. Section 296(6) of the NYHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

63. Section 296(7) provides that it is an unlawful discriminatory practice "to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article."

64. Defendant violated the NYHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work

environment.

65. This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff.

66. The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

67. Defendant was on notice of the conduct constituting the hostile work environment and took no action to resolve it. The Defendant's failure to address the hostile work environment constituted a violation of Section 296(1)(a) of the NYHRL.

68. Defendant's comments and behavior directly created and maintained the hostile work environment and termination to which Plaintiff was submitted in violation of Section 296(6) of the NYHRL.

69. The Defendant was involved in the promotion, demotion, hiring, and firing of Plaintiff and other employees. Defendant was aware of the unlawful actions, took no action upon to stop them, and constructively discharged Plaintiff in retaliation in violation of Sections 296(6) and 296(7) of the NYHRL.

70. The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

71. As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYHRL.

## COUNT V

## **DISCRIMINATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW**

72. Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

73. At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL.

74. At all relevant times, the Defendant had at least four persons in their employ, and therefore the Defendant and their agents and employees were and are required to comply with the NYCHRL.

75. Section 8-107(1)(a)(3) of the NYCHRL prohibits employers from discriminating against an employee because of sex "in terms, conditions or privileges of employment."

76. Section 8-107(6) of the NYCHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

77. Section 8-107(7) of the NYCHRL provides that it is an unlawful discriminatory practice "to retaliate or discriminate in any manner against any person because such person has [] opposed any practice forbidden under this chapter."

78. Defendant violated the NYCHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

79. This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff.

80. The hostile work environment was sufficiently severe and pervasive to

17

unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

81. Defendant was on notice of the conduct constituting the hostile work environment and took no action to resolve it. The Defendant's failure to address the hostile work environment constituted a violation of Section 8-107(1)(a)(3) of the NYCHRL.

82. Defendant's supervisors' comments and behavior directly created and maintained the hostile work environment and termination to which Plaintiff was submitted in violation of Section 8-107(6) of the NYCHRL.

83. The Defendant's supervisors were involved in the promotion, demotion, hiring, and firing of Plaintiff and other employees. Defendant was aware of Plaintiff's complaints and took no action upon them, and constructively terminated Plaintiff in retaliation for his complaints, in violation of Section 8-107(6) and (7) of the NYCHRL.

84. The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

85. As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b. An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages due under the FLSA and the New York Labor Law, including overtime wages due to time-shaving;

d. An award of unpaid wages due under the FLSA and the New York Labor law, including those due to failure of Defendant to pay overtime premium;

e. An award of statutory premiums for spread of hours as a result of Defendants' failure to comply with New York Labor Law;

f. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages for all hours of work, pursuant to the New York Labor Law;

i. An award of compensatory damages, punitive damages, and attorney's fees due to Defendant's discriminatory conduct;

j.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k.  Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

l.  Designation of this action as a class action pursuant to F.R.C.P. 23;

m.  Designation of Plaintiff as Representatives of Class; and

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: December 30, 2022                    Respectfully submitted,

By:    /s/ C.K. Lee
      C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiff, and the Class*